# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### NORTHERN DIVISION

| | | |
|---|---|---|
| Tommy's Castaic, LLC, Tommy's California Ventura, LLC, Larsons Marine d/b/a Tommy's Stockton, Larsons Marine d/b/a Tommy's Sacramento, High Country Watersports, LLC d/b/a Tommy's Colorado, MKB Florida Holdings, LLC d/b/a Tommy's Florida, Tommy's Phoenix, LLC, Tommy's Las Vegas, LLC, Tommy's Knoxville, LLC, Walloon Lake Village Marina, LLC d/b/a Tommy's Michigan, Tommy's Chattanooga, LLC, Tommy's Fort Worth, LLC, Tommy's Lewisville, LLC, Tommy's Detroit, LLC, Tommy's Grand Rapids, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 3:24-CV-00166-KAC-JEM |
| vs. | ) ) | |
| Malibu Boats, Inc. and Malibu Boats, LLC, | ) ) | |
| *Defendants*. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## INTRODUCTION

This case arises from Malibu Boats' decision to end its dealer relationships with fifteen Malibu dealerships owned or operated by Matthew Borisch and his related entities. Malibu Boats, Inc. (together with Malibu Boats, LLC "Malibu") is a public company engaged in the design, manufacture and marketing of powerboats. Plaintiffs are fifteen former independent Malibu dealers that did business under the brand-name "Tommy's." The parties' relationship was governed by Dealership Agreements that provided each dealership with rights to operate as an exclusive Malibu dealer in a designated locality. Those Agreements expired on June 30, 2023, except for two in Texas which were terminated in March 2024.

The plaintiffs' Complaint alleges that the parties typically renegotiated their Dealership Agreements after the prior year's Agreement's expired. But in early 2024, Malibu learned that Tommy's had defaulted under its loan agreement with M&T Bank, the lender that financed its business with Malibu. Malibu then promptly confirmed to plaintiffs that the Agreements were expired, and Malibu would not be renewing any of the Agreements. In March 2024, Malibu also terminated the two Texas Agreements that had not expired.

On May 20 and 21, 2024, plaintiffs filed for chapter 11 bankruptcy in the Northern District of Texas. Plaintiffs then commenced litigation against Malibu in the bankruptcy proceedings, asking the bankruptcy court to find that the Dealership Agreements remained in effect notwithstanding their expiration and termination. On June 7, 2024, the bankruptcy court decided those issues on the merits against plaintiffs, finding that the agreements had expired on June 30, 2023, except for the two in Texas that were terminated in March 2024. The bankruptcy court's findings on those issues have preclusive effect in this action and Tommy's is collaterally estopped from relitigating them.

Despite the Dealership Agreement's plain language, the plaintiffs' Complaint in this action

alleged multiple breaches of the Dealership Agreements. But, except for the Texas Agreements, those Agreements were not in effect at the time of the alleged breaches, and the Bankruptcy Court found that none of the conduct plaintiffs' alleged could be construed as renewing the Agreements. Insofar as Tommy's alleges that, even in the absence of a contract, Malibu's alleged conduct entitled plaintiffs to new Agreements under theories of quantum meruit or unjust enrichment, those claims should be dismissed because the Dealership Agreements expressly provided that "[a]ny . . . performance following the expiration or termination of this agreement will not be construed as a renewal or extension of the Term of this agreement, but as independent and separate transactions terminable at will by Malibu."

Finally, plaintiffs bring claims for promissory estoppel, fraud, and negligent misrepresentation based on an alleged promise to enter into new Agreements and corresponding repurchase agreements with M&T Bank. But none of those alleged promises are described with particularity as they must be under Fed. R. Civ. P. 9(b). The Complaint does not allege what specifically was said, by whom, when, and where, and the Complaint does not include any factual allegations adequate to show fraudulent intent. For these reasons, as well as the additional reasons set forth below, the Complaint should be dismissed.

## FACTUAL BACKGROUND

Malibu is a designer, manufacturer and marketer of recreational powerboats. (Compl. ¶ 36.) For a number of years, plaintiffs had bought boats from Malibu which they then sold through plaintiffs' various Tommy's-branded dealerships. (*Id.* ¶¶ 42, 44.) Malibu's relationship to plaintiffs was governed by Dealership Agreements entered into between Malibu Boats, LLC and each of the plaintiff dealerships, and is governed today by such provisions as survive the expiration or termination of those Agreements. (*Id.* ¶ 33.)

The non-Texas Dealership Agreements had a one year term and expired by their terms on

June 30, 2023.  (Ex. 1 § 2 and Exhibit 1 to the Agreement;[1] Compl. ¶ 101.)  Malibu did not enter into new Agreements.

The two Texas Dealerships Agreements, with Tommy's Fort Worth, LLC and Tommy's Lewisville, LLC, had a three-year term running until June 30, 2025.  (Ex. 2 § 2 and Exhibit 1 to the Agreement; Compl. ¶¶ 94, 95.)[2]  In March 2024, Malibu terminated the Texas Dealership Agreements citing, among other issues, plaintiffs' default with their floor plan lender, M&T Bank, and resulting lack of floor plan capacity.  (*Id.* ¶¶ 4, 83.)

**The Complaint's Contract Claims**

The Complaint contains three counts for breach of the Dealership Agreements which are collectively based on five purported breaches (Counts I, II, & III).  (*Id.* ¶¶ 93-115.)  It describes these five purported breaches of the Dealership Agreements as (1) "pretextually terminating" the Agreements; (2) "fraudulently inducing the conditions under which Malibu purports to terminate" the Agreements in breach of the implied covenant; (3) "holding conversations with other . . . dealerships to take Tommy's territories"; (4) failing to pay "incentives (*i.e.*, interest reimbursement, discounts and rebates) earned by Tommy's dealerships in 2022-2024"; and (5) not providing new Agreements or notice of non-renewal prior to the Agreements' expiration.  (*Id.* ¶¶ 93-115.)  The Complaint does not attach an exemplar of the Dealership Agreements, and with one exception, does not refer to or describe *any* specific contract provision that Malibu purportedly

---

[1] "Ex." refers to Exhibits identified in the Declaration of Ian Shapiro in Supp. of Mot. to Dismiss, consisting of Dealership Agreements and the bankruptcy court's Decision and Order.  On a Rule 12(b)(6) motion the court may consider documents that the plaintiff "references or quotes" in the complaint, and public records "includ[ing] documents from other court proceedings," "without thereby converting [the] motion to dismiss into a motion for summary judgment."  *See Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) (internal quotation omitted).

[2] Except for the term of the two Texas Dealership Agreements, all the Dealership Agreements are substantially identical.  (*See* Ex. 5 at 27:8-15.)

breached.  (*Id.* ¶¶ 35, 93-115.)

**The Complaint's Quasi-Contractual Claims**

The Complaint asserts counts for quantum meruit (Count IV) and unjust enrichment (Count V).  Under these two counts, the Non-Texas Dealerships contend that they are "entitled to receive new Dealership Agreements, repurchase agreements, and the agreed-to dealer incentives for 2022-2024."  (*Id.* ¶¶ 122, 125.)

These quasi-contract claims counts are supposedly pleaded by the Non-Texas Dealerships in the alternative to Count II, and they address conduct after the Non-Texas Dealership Agreements expired.  (*Id.* ¶¶ 117, 122, 124-25, 127.)  However, they fail to address the provisions of the Dealership Agreements that govern the relevant aspects of the parties' relationship following expiration.

**The Complaint's Claims Based on Purported Extra-Contractual Promises**

The Complaint's remaining three counts are styled as promissory estoppel, fraud, and negligent misrepresentation.  Each count is based on purported promises that Malibu would enter into new Dealership Agreements with plaintiffs for 2023-24, or would enter into a repurchase agreement with plaintiffs' lender, M&T Bank.  (*Id.* ¶¶ 116-154.)

With respect to the purported promise of new Agreements, the Complaint provides no details of when, where, by whom, or to whom a promise was made.  With respect to the alleged promise of a repurchase agreement, the Complaint alleges, on information and belief, that Malibu "*discussed* a repurchase agreement" with M&T around the time Tommy's moved its lending facility to M&T.  (*Id.* ¶ 58 (emphasis added).)  The Complaint also alleges that Malibu "represents"

generally and publicly that it provides lenders with repurchase agreements.  (*Id.* ¶¶ 54, 65.)[3]  There is no other factual substance to the allegation that Malibu "represented publicly and to . . . M&T Bank" that it would provide a repurchase agreement (*id.* ¶ 65).  Nor is there any allegation of when or how *plaintiffs* heard, or came to rely on, such a purported representation to M&T.

### The Relevant Terms of the Dealership Agreements

The Agreements are governed by Tennessee law.  (Ex. 1 § 17.)  The Dealership Agreements appoint plaintiffs as Malibu dealers, each within a defined territory, "subject to the terms of this Agreement," to any attached schedules, and "any Malibu policies, procedures or programs . . . any of which may be published from time to time, … all of which are incorporated by reference as part of this Agreement."  Such policies, procedures and programs "are fully enforceable as a part of this Agreement."  (*Id.* § 1(c).)

*Conditions Relating to Plaintiffs' Financial Status and Credit:*  Section 4(a) of the Agreements provides that "Dealer shall maintain a credit standing and financial condition satisfactory to Malibu" and "shall, at all times, comply with all financing and lending requirements and obligations, including the making of all payments, curtailments, and so forth."  (*Id.* § 4(a).)

*Events of Default and Definition of Conditions Precedent:*  Section 10 defines "events of default" to include "any failure of Dealer to perform the requirements, terms and conditions set forth elsewhere within this Agreement" as well as enumerated events including "[a]ny failure [of] Dealer to have sufficient and adequate floor plan financing . . . to perform Dealer's obligations."  (*Id.* § 10(c).)  The Agreement further expressly provides that Dealer's "performance of its obligations hereunder shall be deemed a condition precedent to Malibu's obligations under this

---

[3]  Malibu has stated in securities filings:  "[a]s is typical in our industry we have entered into repurchase agreements with certain floor plan financing providers to our dealers."  *See* Malibu Boats, Inc. Form 10-K for the fiscal year ended June 30, 2023, at 5.

Agreement." (*Id.* § 11.)

**Remedies for Default:** Section 11 sets out Malibu's non-exclusive remedies for an event of default. These remedies include the right to "[d]eclare Dealer ineligible to participate in any incentive programs, special buying programs, rebates, bonuses or other financial incentives"; "cause . . . program incentives, rebates, bonuses and other financial incentives to be forfeited, cancelled or not renewed"; and the right to terminate the Agreement. (*Id.* §§ 11(d), (e), (g).)

**Incentives:** The Dealership Agreements incorporate Malibu's Dealer Performance Program ("DPP"), which offers Dealers several different types of financial incentives. These programs are described in Malibu's annual DPP documentation and include various bonuses, rebates, interest reimbursements, and other programs that may be available to Malibu dealers (any such programs are referred to here as "Incentives"). (*Id.* § 1(c); Ex. 3; Ex. 4.) The DPP terms summarize conditions for obtaining Incentives. (Ex. 3; Ex. 4.) Among these express conditions, the DPP terms provide:

> a. Participation in _**ALL**_ Malibu DPP programs is conditioned on the dealer's compliance with its Dealer Agreement and timely payment within credit terms on their boat, part and warranty accounts.
>
> b. Malibu Boats shall have the sole right to determine qualification and compliance with the terms and conditions of this DPP programs. Malibu reserves the right to modify, suspend, terminate or replace the DPP program or any sales program at any time.

(Ex. 3 ¶ 14; *see* Ex. 4 ¶ 7(a), (b) (setting out similar provisions of 2024 DPP).) The Dealership Agreements also provide that a Dealer "shall not be eligible to . . . receive rebates, payments or incentives, during any period in which Dealer is in default of any provision of this Agreement." (Ex. 1 § 5(b).)

**Term, Expiration and Termination:** Section 2 of the Dealership Agreements addresses term, expiration and post-expiration conduct. It provides:

This Agreement must be signed by both parties to be effective, and starts on the Effective Date and will expire and terminate as set forth in Exhibit 1, unless earlier terminated under this Agreement. Malibu will provide Dealer with a new agreement, or notice of non-renewal or termination, reasonably in advance of the expiration of this Agreement. In the event any new agreement is signed, this Agreement shall be deemed superseded, null and void, as of the effective date of any new agreement. Any new agreement may contain terms, conditions and requirements which are different than those contained in this Agreement. Nothing in this Agreement (including provisions or projections dealing with future performance goals or requirements for periods beyond the term of this Agreement) shall be construed to create a promise, representation or agreement of a continuing relationship beyond the term of this Agreement, and this Agreement shall be deemed terminated, null and void, if no new agreement is signed except as to any provisions which expressly continue beyond the term of this Agreement. Any payment or performance following the expiration or termination of this Agreement will not be construed as a renewal or extension of the Term or this Agreement, but as independent and separate transactions terminable at will by Malibu.[4]

**The Bankruptcy Proceeding and Bankruptcy Court's Order**

On May 20 and 21, 2024, plaintiffs each filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States District Court for the Northern District of Texas. On June 3, 2024, plaintiffs, as debtors in the bankruptcy proceeding, filed a motion with the bankruptcy court contending that Malibu was violating the automatic stay under Section 362 of the Bankruptcy Code ("Stay Motion") by permitting others to conduct business as Malibu dealers within the exclusive territories of plaintiffs' Dealership Agreements. (Ex. 5 at 4:9-13, 5:13-20, 22:19-24:8.) Malibu filed a written objection to the Motion. (*See id.* at 5:13-20.) On June 6, 2024, the bankruptcy court conducted an evidentiary hearing at which Mr. Borisch testified

---

[4]   As Section 2 states, certain provisions of the Agreement expressly survive expiration or termination. Section 13 elaborates on the consequences of expiration and termination providing, among other things, that "Malibu is not obligated to purchase any of Dealer's inventory . . . under any circumstances (including the termination or expiration of this Agreement)." (*Id.* § 13(b).) It also states, underscoring the final sentence of Section 2, that "acceptance of orders," "sale of boats to" or any "transaction of business" after expiration or termination "shall not be construed as a continuation of this Agreement, the commencement of a new agreement, or a waiver of any termination of this Agreement." (*Id.* § 13(c).) Section 6, which sets out the terms for Dealer's marketing and promotion of Malibu products, survives for 24 months after termination. (Ex. 1 § 6(h).)

in support of plaintiffs' stay motion, documentary evidence was admitted, and oral argument was heard. (*See id.* at 5:25, 6:3-9.) Under the Bankruptcy Code, the threshold question was whether the Dealership Agreements were in effect at the time plaintiffs filed their bankruptcy petitions. (*Id.* at 22:19-23:13.)

Plaintiffs contended that the Dealership Agreements continued in effect, notwithstanding their prior expiration or termination, (1) because Malibu had not provided a new Agreement or notice of non-renewal before the Agreements expired by their terms; and (2) because the alleged course of dealing between the parties implied that the Agreements continued in effect. (*Id.* at 29:21-25, 39:8-14.) Malibu objected that "there are no such non-expired, non-terminated dealership agreements that remain in force, at least to the extent that they would provide to the Debtors exclusive territorial rights," and the parties' course of conduct did not establish otherwise. (*Id.* at 24:9-13.)

On June 7, the bankruptcy court issued its factual findings, conclusions of law, and decision, denying the Stay Motion in all respects. The decision addressed the terms of the Dealership Agreements, Section 2 in particular. The court found Section 2 to be crystal clear in providing that the Dealership Agreements "would expire and terminate as set forth on Exhibit 1 unless earlier terminated," meaning that the Non-Texas Agreements had expired on June 30, 2023. (*Id.* at 32:1-6.) The court rejected plaintiffs' argument that the renewal notice provision of Section 2, and failure to provide that notice, "negate the fact that, by the plain terms of the agreement, it expired and terminated as of the expiration date." (*Id.* at 32:16-18.) The court found to the contrary that Section 2 makes expressly clear that:

> nothing in the agreement is to be construed as a promise . . . of a continuing relationship beyond the term of the agreement, and that once it's terminated the agreement is done and it's null and void, except to the extent that a separate

provision [such as Section 6]. . . makes it expressly clear that that provision will have continuing vitality post-termination/post-expiration.

(*Id.* at 32:22-33:5; *see* 34:24-35:14.)  The court also construed the final sentence of Section 2, addressing performance following expiration or termination, which it summarized as an express warning to plaintiffs "that, while someone may feel that it's unfair to sort of continue to conduct business post-expiration . . .  this provision says, *Don't be led on*; if we continue to do business, it's to be treated as a separate and independent transaction on the terms that we're working under with respect to those transactions."  (*Id.* at 33:6-18 (emphasis added).)

Regarding the plaintiffs' argument about the parties' course of dealing, the court found that there was no "course of conduct which rose to the level of effectively an amendment to the 2023 dealership agreements to modify the term language."  (*Id.* at 39:18-22.)

The Court found that in early 2024, Malibu learned that M&T had declared a default against plaintiffs under plaintiffs' lending agreements, and any discussion of new Dealership Agreements was "over . . . for all practical matters."  (*Id.* at 11:17-23, 40:22-41:2.)  On February 22, 2024, Malibu wrote to plaintiffs emphasizing, as it had before, that there were no Dealership Agreements in effect.  (*Id.* at 42:9-11.)  On February 27, 2024, M&T sent a default letter to plaintiffs.  (*Id.* at 42:12-13.)  On March 11, 2024, Malibu informed plaintiffs by letter that it was terminating one of the Texas dealership agreements, and on March 22, 2024, Malibu wrote to plaintiffs "confirming the expiration, or termination, as applicable of all prior agreements."  (*Id.* at 42:14-19.)

On June 10, 2024, the bankruptcy court entered an order denying the Stay Motion, incorporating all of the foregoing findings and conclusions from the June 7, 2024 ruling.  (Ex. 6.)

## ARGUMENT

### I.   THE BANKRUPTCY COURT'S ORDER HAS ISSUE PRECLUSIVE EFFECT IN THIS ACTION

Issue preclusion bars the "relitigation of issues of fact or law actually litigated and decided

in a prior action between the same parties and necessary to the judgment." *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quotation omitted). The only requirements for preclusion are that (1) the same issue was raised and actually litigated in the prior proceedings; (2) determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings resulted in a final judgment on the merits; and (4) the party to be precluded had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

Issue preclusion applies here to prevent the re-litigation of relevant issues of fact and law actually litigated by these same parties and decided on the merits by the bankruptcy court. That court's findings, detailed above, were the court's basis for a carefully reasoned decision denying the Stay Motion on its merits, and thus are necessary to that decision. The decision, which sets forth findings of fact and conclusions of law following full briefing, an evidentiary hearing and oral argument, is final for purposes of issue preclusion.[5] Nor is there any question that plaintiffs had a full and fair opportunity to litigate the issues of law and fact that they raised.

For purposes of this action and motion, the bankruptcy court's Order: (1) provides a construction of Section 2 and related provisions of the Dealership Agreements that is binding on plaintiffs; (2) establishes that the Non-Texas Agreements expired by their terms on June 30, 2023, and were not thereafter continued, extended or renewed based on the parties' conduct; and (3) establishes that, in late February 2024, M&T declared plaintiffs in default of their floor plan loan agreement, which constituted an event of default under the Dealership Agreements (specifically

---

[5] A "final judgment" for purposes of issue preclusion is simply "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Emps. Own Fed. Credit Union v. City of Defiance, Ohio,* 752 F.2d 243, 245 (6th Cir. 1985) (*quoting* Restatement (Second) of Judgments § 13, at 132 (1982)).

the two Texas Agreements which were the only Dealership Agreements then in effect).  (*See* Ex.2 §§ 4(a), 10(c).)

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss brought under Fed. R. Civ P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see Phillips v. DeWine,* 841 F.3d 405, 414 (6th Cir. 2016).  A claim is "facial[ly] plausib[le] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).  Thus, for a plaintiff to show it is "entitled to relief . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must contain factual allegations adequately supporting every element necessary to sustain relief.  *Id.* at 562; *see McKnelly v. Wyndham Destinations, Inc.*, 2020 WL 1518624, at *3-4 (E.D. Tenn. Mar. 30, 2020).  "Naked assertions devoid of further factual enhancement" contribute nothing to the sufficiency of a complaint.  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

### A. The Breach of Contract Claims Should Be Dismissed

Counts I, II and III collectively assert claims for five different breaches of the Dealership Agreements, on behalf of the Texas Dealerships (Count I) and the non-Texas Dealerships (Counts II and III) respectively.  The elements of a breach of contract under Tennessee law are:  "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank*

*of Lawrence*, 910 F.3d 270, 281 (6th Cir. 2018) (quoting *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011)).

Initially, the Complaint generally fails adequately to allege any non-performance amounting to a breach of contract. "[I]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (quotation omitted) (affirming 12(b)(6) dismissal because "Northampton did not attach any contracts to its complaint and did not include the language of any specific contractual provisions that had been breached by the bank."). For example, in *McKnelly*, 2020 WL 1518624, at *3-4, the Court dismissed a contract claim under Tennessee law that contained "factual allegations about actions of defendant that could constitute non-performance," but omitted "reference to any language of the contract imposing an obligation to perform differently." On such allegations, the court could not infer that defendant failed to perform in accordance with "some defined contractual obligation." *Id.* at *4; *accord Brooks v. Wells Fargo Bank, N.A.*, 2014 WL 345737, *2-4 (M.D. Tenn. Jan. 30, 2014) (holding that plaintiff failed sufficiently to "allege nonperformance . . . that amounted to a breach" where plaintiff "makes no effort to detail the alleged breach in the context of the [written contract], or to even identify the supposedly 'unlawful fees'").

Here, the Complaint does not attach the Dealership Agreements and, with one exception, fails to refer to, much less present the Court with, the contract provisions defining any of Malibu's contractual obligations. From bare allegations of breach that are not shown to correspond to any defined contractual duties, it is impossible to infer non-performance amounting to a breach.

### 1. The Complaint fails to state a claim for "pretextual[ ] terminat[ion]"

Counts I and II claim that Malibu breached respectively the Texas and non-Texas

Dealership Agreements by "pretextually terminating" in March 2024. (Compl ¶¶ 97, 106.) Alleging "pretextual[ ] terminat[ion]" (*id.* ¶¶ 2, 4, 97, 106), does not state a claim. "Pretextual termination" is not a doctrine recognized in Tennessee contract law. Except in special contexts such as employment or civil rights law, Tennessee does not inquire into a party's motives for terminating a contract in accordance with its terms.

Further, as to Count II, the claim must be dismissed because the Non-Texas Dealership Agreements expired by their terms on June 30, 2023. (Ex. 1 § 2, Ex. 5 at 32:1-6.) While Malibu would certainly have had the right to terminate those Agreements for plaintiffs' defaults were they in effect, they had terminated by operation of law. (*Id.*)

As to Count I, while the two Texas Dealership Agreements remained in effect, there is no question Malibu had the unequivocal, discretionary right to terminate those Agreements based on an event of default. The bankruptcy court's findings establish that M&T defaulted plaintiffs under plaintiffs' floor plan loan agreement, which is an event of default authorizing Malibu to terminate under the plain terms of the Dealership Agreements. (*See* Ex. 2 §§ (4)(a), 10(c); 11.) Malibu's supposed motives for exercising the right to terminate have no bearing on the validity of its termination. *See*, *e.g.*, *Little Caesar Enterprises, Inc. v. Miramar Quick Serv. Rest. Corp.,* 2020 WL 4516289, at *2 (6th Cir. June 25, 2020) (holding that so long as franchise agreements authorized franchisor to terminate for franchisee's breaches, franchisor "could terminate franchise agreements regardless of its alleged motivation.").

### 2. The Complaint fails to state a claim under the implied covenant

Counts I and II claim that Malibu breached the Texas and Non-Texas Dealership Agreements by "fraudulently inducing the conditions under which Malibu purports to terminate the Dealership Agreements" in breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 97-98, 106-07.) The Complaint fails to state a claim for this breach *first* because, for

the reasons discussed in Point II.D, *infra*, the Complaint fails to state a claim for any type of fraud; and *second,* because plaintiffs cannot plead breach of the implied covenant without "offer[ing] language of the contract or otherwise alleg[ing] facts defining the contractual obligations" imposed by the contract. *See McKnelly*, 2020 WL 1518624, *5; *accord Brooks*, 2014 WL 345737, *3-4.

### 3. The Complaint fails to state a claim for "holding conversations"

Counts I and II claim that Malibu breached the Texas and Non-Texas Dealership Agreements by "holding conversations with other boat dealerships to take Tommy's territories." (Compl. ¶¶ 97, 106.) The Complaint fails to identify any provision in the Agreements prohibiting Malibu from conducting such conversations, and there is none. Further, the only factual allegation relevant to this claim indicates that any such conversations occurred *after* the non-Texas Dealership Agreements expired and Malibu validly terminated the Texas Dealership Agreements. (*Id.* ¶¶ 83, 89, 90.)

### 4. The Complaint fails to state a claim for non-payment of Incentives

Counts I, II and III claim that Malibu breached the Texas Dealership Agreements and the non-Texas Dealership Agreements by failing to pay Incentives purportedly earned by Tommy's dealerships in 2022-2024. (*Id.* ¶¶ 62-63, 90, 97, 106, 111-13.) Each count asserts claims for Incentives supposedly "earned" in "2022-2024." (*Id.* ¶¶ 90, 97, 106, 113.) However, any claims in relation to the period after June 30, 2023, when the Non-Texas Dealership Agreements expired, could necessarily only relate to Incentives claimed by the two Texas dealerships. Without a Dealership Agreement, plaintiffs were not eligible for Incentive programs. (*See* Ex. 3 § 14, Ex. 4 § 7 (providing that Incentive programs are conditioned on a Dealership Agreement).)

In any event, with respect to all periods and Agreements, the claims are inadequately pleaded and must be dismissed. The Incentives claim is unsupported by any contract language defining the obligations Malibu allegedly breached, or a description of plaintiffs' relevant conduct

14

that "entitled" plaintiffs to Incentives.  (*Id.* ¶¶ 62, 63, 97.)  The Dealership Agreements provide that all Incentives were conditional on compliance with the Dealership Agreements, that Malibu had the "sole right to determine qualification and compliance with the terms of and conditions of this DPP program[ ]," and that Malibu could find a Dealer ineligible for Incentives, or forfeit or cancel Incentive payments, for an event of default.  (Ex. 1 § 11(d), (e); Ex. 3 ¶ 14; Ex. 4 ¶ 7.)  Given those provisions, the Complaint does not come close to adequately supporting a reasonable inference that the alleged non-payment of Incentives was "non-performance amounting to a breach of the contract."  *Franklin Am. Mortg. Co.*, 910 F.3d at 281 (quotation omitted).  Further, such an inference is also unwarranted in light of the bankruptcy court's finding that plaintiffs defaulted under their floor plan lender agreement with M&T, which was an event of default under the Dealership Agreements.  (*See* Ex. 1 §§ 4(a), 10 (c), 11(d), (e).)

### 5. The Complaint fails to state a claim regarding notice of non-renewal

Count II claims, on behalf of the non-Texas dealerships, that Malibu breached their Dealership Agreements by not providing notice under the non-renewal notice provision.  (Compl. ¶¶ 35, 106, 108.)  The provision states that Malibu "will provide Dealer with a new agreement, or notice of non-renewal or termination, reasonably in advance of the expiration of this Agreement." (Ex. 1 § 2.)  The Complaint fails to state a claim for this breach because it fails adequately to allege that any such breach caused Tommy's any direct or foreseeable damages, which are essential elements of the claim.

The Dealership Agreements, including the non-renewal notice provision, did not provide plaintiffs with any basis to expect new Agreements or a continuing relationship with Malibu after the Agreements' expiration.  As the bankruptcy court found:  (i) the Non-Texas Dealership Agreements were void after June 30, 2023, irrespective of whether Malibu had given notice of non-renewal (Ex. 5 at 32:16-33:5, 34:24-35:14); and (ii) the Agreements delivered an unequivocal

message that "[n]othing in this Agreement shall be construed to create a promise, representation or agreement of a continuing relationship beyond the term of this Agreement." (Ex. 1 § 2; Ex. 5 at 33:12-18.) Given those terms of the Dealership Agreements and the bankruptcy court findings, the only damages reasonably foreseeable by the parties would have to relate to the parties' business relationship before expiration.

If there are any such reasonably foreseeable damages that might result from a failure to give notice of non-renewal, Count II fails to identify any plausible candidates. Count II lists seven categories of alleged damages. (Compl. ¶ 108.) Categories one to three are: (1) obtaining additional floor financing from M&T; (2) taking delivery of more expensive Malibu boats; and (3) attendance at "boat shows representing Malibu for the upcoming season." (*Id.*) All the conduct in categories one to three described in the Complaint was directed to the post-expiration model years.[6] Thus, it was undertaken with knowledge that Malibu had not provided new Dealership Agreements. Categories four to seven simply describe effects of the loss of the Dealership Agreements on Tommy's business. (*Id.*) As Section 2 of the Dealership Agreements makes clear, lack of notice of non-renewal did not cause the expiration or non-renewal of the Dealership Agreements. The Agreements expired by operation of law regardless of notice of non-renewal.

### B.    The Quantum Meruit/Unjust Enrichment Claims Should Be Dismissed

Counts IV and V assert that the non-Texas dealerships "are entitled to receive new Dealership Agreements, repurchase agreements, and the agreed-to dealer incentives for 2022-2024" based on quasi-contract theories of quantum meruit and unjust enrichment. (Compl. ¶¶ 122,

---

[6] Specifically, the Complaint alleges that the increased floor plan financing was to fund plaintiffs' inventory for the new model year (*i.e.*, commencing July 1, 2023) (Compl. ¶¶ 60, 64), that after the increased financing was in place plaintiffs began to receive (and chose to take delivery of) more expensive Malibu boats then they preferred (*Id.* ¶ 68), and that plaintiffs principal attended the Miami boat show in February 2024. (*Id.* ¶ 73.)

127.)  Quantum meruit is an "equitable substitute for a contract claim," permitting recovery of the reasonable value of goods and services provided to another if the following circumstances are shown:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter; (2) The party seeking recovery proves that it provided valuable goods or services; (3) The party to be charged received the goods or services; (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Services of Tennessee, Inc.,* 46 S.W.3d 191, 197–98 (Tenn. 2001).  The elements of unjust enrichment are "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof."  *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations omitted).  Importantly, a plaintiff must also "adequately allege [that] there is no contract between the parties or a contract has become unenforceable or invalid."  *Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.,* 667 F. Supp. 3d 734, 747 (E.D. Tenn. 2023).

Plaintiffs' claims must be dismissed *first,* because they are barred by the written Dealership Agreements that govern this subject matter.  Whether plaintiffs are entitled to receive "new Dealership Agreements, repurchase agreements, . . . [or] dealer incentives," either prior to or following expiration is addressed by express provisions of the Dealership Agreements.  (*See* Ex. 1 §§ 2, 11(d), (e), 13(b), (c); Ex. 3 ¶ 14; Ex. 4 ¶ 7.)  Plaintiffs contend that because they ordered and accepted boats, and "operat[ed] [their] business with Malibu as though Dealership Agreements were in place" after expiration, they should receive new Agreements and Incentives that are only available under those Agreements.  (Compl. ¶ 117, 122.)  But the Dealership Agreements say the opposite, telling plaintiffs the Agreements are terminated for all purposes, to not be "led on" by

the conduct of any post-expiration business, and that any "payment or performance following expiration or termination . . . will not be construed as a renewal or extension of the Term or this Agreement, but as independent and separate transactions terminable at will by Malibu." (Ex. 1 § 2.)

Second, the claims pleaded in the Complaint are simply not quasi-contract claims at all. Quantum meruit and unjust enrichment provide restitution of a benefit conferred by a party on another and unjustly retained. They are not a means to enforce alleged promises. The Complaint does not identify a benefit conferred on Malibu that must be restored to plaintiffs to avoid injustice. It simply asks the Court to award "new Dealership Agreements, repurchase agreements, [and] . . . dealer incentives" that plaintiffs say Malibu represented or promised it would provide. (Compl. ¶ 136.) Demands to enforce an alleged promise do not state a claim for quantum meruit or unjust enrichment.

Third, even setting aside the Dealership Agreements, the Complaint does not adequately allege quantum meruit or unjust enrichment. A party providing services in the hope of "benefitt[ing] itself by obtaining a new contract" is acting in its "own commercial interest" and has no claim for quantum meruit or unjust enrichment if the contract fails to materialize. See MidAmerican Distribution, Inc. v. Clarification Tech., Inc., 485 F. App'x 779, 780–81 (6th Cir. 2012) (applying Kentucky law); see generally 66 Am. Jur. 2d Restitution and Implied Contracts § 41 ("the expectation of a future business advantage or opportunity cannot form the basis of a cause of action for quantum meruit.").

## C. The Promissory Estoppel and Misrepresentation Claims Should Be Dismissed

Counts VI, VII and VIII assert claims based on purported promises that Malibu would (1) enter into a repurchase agreement with M&T (id. ¶¶ 129, 139, 149), and (2) enter into new Dealership Agreements. (Id. ¶¶ 130, 139, 149.) All three counts fail for lack of particularity under

Fed. R. Civ. P. 9(b), and for failure to state a claim.

### 1.    The Claims Are Not Pleaded With The Required Particularity

Under Fed. R. Civ. P. 9(b) a complaint "must state with particularity the circumstances constituting fraud." The rule applies equally to claims of intentional fraud, negligent misrepresentation, and promissory estoppel in the nature of fraud, as is alleged here. (*See* Compl. ¶¶ 134, 136.) *E.g. LeBlanc v. Bank of Am., N.A.,* 2013 WL 3146829, *14-16 (W.D. Tenn. June 18, 2013) (applying Rule 9(b) to Tennessee claims of promissory estoppel and negligent representation). Pleading with particularity requires the plaintiff "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). Rule 9(b) permits state of mind to be alleged generally, but a "plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Id.* (internal quotations omitted).

Counts VI, VII and VIII fail the Rule 9(b) particularity standard. The Complaint never says when, where, or by whom the alleged promises were uttered. The Complaint alleges that the two key promises at issue were, in fact, only conditional promises subject to "clear standards for what Tommy's must do in order to receive a repurchase agreement or new Dealership agreements." (Compl. ¶ 131.) But it never describes the "clear standards" that allegedly would need to be satisfied, or alleges they were satisfied. The Court cannot infer that Malibu made false promises or breached promises when the alleged promises were conditional and there are no allegations of those conditions or their satisfaction. And the Complaint alleges no facts to make plausible that these unspecified conditional statements of future intent were false when uttered.

### 2.    The Complaint fails to state a claim for promissory estoppel

Count VI, on behalf of the non-Texas Dealerships, seeks to enforce the purported promises

to enter into a repurchase agreement with M&T and into new Dealership Agreements. To plead promissory estoppel, plaintiffs must adequately allege "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). Tennessee law limits the doctrine "to exceptional cases where a defendant's conduct is akin to fraud." *LeBlanc*, 2013 WL 3146829, at *14 (internal quotation omitted). Even if the Complaint were sufficient under Rule 9(b), it fails to sufficiently support the claim.

The two promises on which plaintiffs rely—supposed promises to provide new Dealership Agreements and repurchase agreements—are unenforceably ambiguous and vague. *See Amacher v. Brown-Forman Corp.,* 826 S.W.2d 480 (Tenn. Ct. App. 1991) (affirming summary judgment given the vagueness of plaintiffs' description of distiller's conditional promises to continue supplying "stillage" to farm). The Complaint fails to allege the conditions on the promises (*see* Compl. ¶ 131), or that Malibu represented it would enter into such agreements at or within any particular period of time. The Complaint's allegation that the promises "were unequivocal and set clear standards for what Tommy's must do" (Compl. ¶ 131) merely recites a legal requirement of promissory estoppel. The Complaint alleges no facts to show the requirement is met.

The Complaint also fails to allege facts to support an inference of reasonable reliance. A belief that plaintiffs were bound to receive new Agreements, or related repurchase agreements to support their continued borrowing, was contrary to the express terms of Section 2 of the Dealership Agreements which say that the Agreements would expire by their terms, and that any performance "following the expiration . . . will not be construed as a renewal or extension . . . ." (Ex. 1 § 2.)

### D. The Complaint fails to state a claim for fraud

Count VII, apparently asserted on behalf of all plaintiffs, claims "intentional misrepresentation/fraud" based on the alleged promise to enter into a repurchase agreement and

new Dealership Agreements, and fails for reasons similar to Count VI. (Compl. ¶¶ 139-146.) Although styled as a claim for "intentional misrepresentation," the claim is based on alleged false promises, not factual representations, and recites the elements of "promissory fraud" under Tennessee law. *See Frankot v. Reg'l Inst. for Veterinary Emergencies & Referrals*, 2013 WL 12192495, at \*5 (E.D. Tenn. July 26, 2013) ("Courts applying Tennessee law recognize a defendant's promise to perform in the future implicates a promissory fraud claim and not an intentional misrepresentation claim."); *Power & Tel. Supply Co. v. SunTrust Banks, Inc.,* 447 F.3d 923, 931 (6th Cir. 2006) ("Statements of future intention . . . are generally not actionable because they do not involve representations of material past or present fact."). The elements of promissory fraud are "(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform." *Frankot*, 2013 WL 12192495, at \*5 (quotation omitted). "[T]he promisor's intention must be shown to be false by evidence other than subsequent failure to keep the promise or subjective surmise or impression of promisee." *D'Alessandro v. Lake Devs., II, LLC,* 2012 WL 1900543, at \*7 (Tenn. Ct. App. May 25, 2012) (quotation omitted); *see* Restatement (Second) Contracts § 171 Comment a ("the truth of a statement as to a person's intention depends on his intention at the time that the statement is made and is not affected if he subsequently, for any reason, changes his mind.").

Count VII suffers from multiple pleading defects in common with Count VI. The alleged promises are vague, ambiguous, indefinite as to time of performance, and apparently conditional, although plaintiffs have alleged neither the conditions nor their satisfaction. In addition, the critical allegation that "Malibu never intended to execute new Dealership Agreements," essential

to a claim for promissory fraud, is not supported by any adequate factual allegations.[7]  (Compl. ¶ 141.)  Unsurprisingly, given that the Complaint fails to allege what specifically was said, by whom or when, it fails to allege any facts to show that Malibu spoke with fraudulent intent.  Whatever Malibu said, Malibu had the right to change its mind.  Failure to perform the supposed promise is not evidence of fraudulent intent.

Likewise, the Complaint fails sufficiently to allege reasonable reliance, including for the all the reasons discussed in reference to Count VI.

### E.    The Complaint fails to state a claim for negligent misrepresentation

Count VIII asserts a claim for negligent misrepresentation based on the purported promises to enter new Dealership Agreements and a new repurchase agreement with M&T.  (Compl. ¶¶ 148-153.)  It is well settled that statements of intention or representations concerning future events are not actionable as negligent misrepresentation.  *Jones v. BAC Home Loans Servicing, LP*, 2017 WL 2972218, at *11 (Tenn. Ct. App. July 12, 2017).  Accordingly, Count VIII must be dismissed.

### <u>CONCLUSION</u>

For all the reasons discussed, the Complaint should be dismissed in its entirety, and the Court should order such other or further relief as it finds appropriate.

---

[7]  The count refers to the supposed promise regarding repurchase agreements but only recites an allegation of fraudulent intent with respect to the supposed promise of new Dealership Agreements.  (Compl. ¶¶ 139, 141-42, 145.)

Dated: June 24, 2024                                       Respectfully submitted,

**PAINE, BICKERS, ELEDER, KING
  AND WILLIAMS LLP**

By:   _/s Taylor A. Williams_                  
          Taylor A. Williams, #028172
          900 S. Gay Street, Suite 2200
          Knoxville, TN 37902
          Telephone: (865) 525-0880
          Facsimile: (865) 521-7441
          taw@painebickers.com

Ian Shapiro (Admitted _Pro Hac Vice_)
Russell Capone (Admitted _Pro Hac Vice_)
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
ishapiro@cooley.com
rcapone@cooley.com

_Attorneys for Defendants Malibu Boats, Inc.
and Malibu Boats, LLC_

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of this pleading or document was filed electronically with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

This 24th day of June, 2024.

**PAINE, BICKERS, ELDER,**
**KING & WILLIAMS LLP**

*/s Taylor A. Williams*